27 C.C.P.A. (Patents)

### In re BABCOCK.

#### Patent Appeal No. 4304.

Court of Customs and Patent Appeals.
April 8, 1940.

George A. Brace, of Chicago, Ill. (Harry S. Demaree, of Chicago, Ill., and Elmer Stewart, of Washington, D. C., of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the examiner rejecting claims 32, 36, and 39 of appellant's application for a patent upon the ground that they are not supported by appellant's disclosure. Claim 44 was also rejected by the examiner upon the same ground, but as to this claim his action was reversed by the board.

Certain other claims were held in abeyance by the examiner pending the outcome of certain interferences.

Before us appellant moved to dismiss the appeal with respect to claims 36 and 39, and that motion will be granted. This leaves for our consideration only claim 32, which reads as follows: "32. An air conditioning unit comprising, in combination, a refrigerating system having a pair of complementary heat exchange elements, means for circulating room air over one of said elements and outside air over the other of said elements, and means forming a separable passage for diverting a portion of said outside air to the flow of room air."

The claim was copied for purposes of interference from a patent, No. 2,105,205, issued to Steinfeld et al. (hereinafter referred to as Steinfeld) on January 11, 1938, upon an application filed February 25, 1933.

Appellant's application was filed November 7, 1931.

As indicated by the claim, appellant's device is designed for cooling rooms. It is placed in a window of the room to be conditioned; in the portion of the device extending inside the window there is an evaporator, while in the portion extending outside the window there is a condenser and a compressor. Room air, together with a certain amount of outside air, is blown by a set of fans over the evaporator to cool the resulting mixture, while outside air is blown over the condenser and compressor by another fan. The cooled air passes upward into the room through openings in the central part of the top of the device. There is a partition in the device which, except for a small opening therein, would prevent any outside air from being mixed with the room air to be circulated over the evaporator. In this opening there is a manually controlled damper, operated by a handle. When closed, the damper prevents any outside air from flowing into the passage containing the room air; when the damper is open, outside air may be admitted, the quantity depending upon the manipulation of the damper. In other words, the proportion of outside air to be mixed with the room air is regulated by the damper.

The patent to Steinfeld is also for a device for room cooling. In a general way the structure disclosed by the patent is similar to that disclosed by appellant.

Instead of an opening in the partition separating the outside air from the room air, provided with a damper, as disclosed by appellant, Steinfeld discloses a connection between the passage containing the room air and that containing outside air which is described in the patent as a "short elbow duct * * * permitting some of the fresh air supplied to said passage * * * to be diverted and supplied to the room air." It is further stated that said elbow has "a normally breakable joint comprising specifically a sloping or inclined end * * * adapted to register with a complementary inclined end of a passage * * *." This elbow duct and the passage referred to,

when they are in operative position, form a single passage whereby outside air may be transmitted to and mixed with the room air. It is further stated that, if desired, "a suitable adjustable pivot valve * * * may be disposed in elbow * * * thereby to variably control the supply of fresh air." This valve corresponds in function to the damper disclosed by appellant. The patent further discloses trays disposed under the condenser and evaporator to collect the drippings from the same. Each tray is longitudinally slidable and carries an end plate; a handle projects outwardly from the end plate; the handle consists of flat spring material having a grip of wood or rubber. The cabinet containing the device has a doorway provided with suitable means to hold the door in position, and handles are provided for manipulation of the door. When in operative position the door presses the breakable joint at the bottom of the elbow into close operative engagement with the inclined end of the passage above referred to, and at the same time presses the trays into a snug fit with the parts with which they contact.

To remove either one or both of the trays the door is pulled outwardly by grasping its handles and then raised upwardly to release the tongue on the bottom edge from the groove in the casing, a certain pipe is disconnected, whereupon the trays may be slidably removed from the device for cleaning or for renewal of the filter. The upper part of the elbow duct above referred to is fixedly connected with the disposal tray so that, upon the removal of said tray the duct is moved with it, thus separating the passage formed as aforesaid at the inclined joint above described. It is this capability of the separation of said passage that the Patent Office tribunals held responded to the element of the claim before us reading "means forming a separable passage for diverting a portion of said outside air to the flow of room air."

The sole question before us is whether appellant in his application discloses the element last above quoted.

■ The word "separable" is defined by Funk & Wagnalls New Standard Dictionary as follows: "separable, * * * 1. Capable of being separated, disjoined, or divided."

It is admitted by appellant that he does not disclose a "separable passage" in the sense that the passage itself is separated into two parts, such as the breakable or separable connection disclosed by Steinfeld. However, appellant contends that his damper, in what is termed by him an "opening" in a partition, may be so manipulated as to separate the fresh air passage from the room air passage, and that therefore he discloses said element of the claim.

After the decision of the Board of Appeals herein appellant, through petition to the commissioner, secured an amendment of his specification so that the reference to the damper reads as follows: "The damper 46 may be moved to a position to cause the fan 26 to suck air through the opening 45 from outside of the building, *or to a position such that the chamber containing evaporator coils 24 is separated from passageway 45 and the outside air.*" (Italics ours.)

The italicized language above quoted constitutes the amendment above referred to.

■ While it is true that, generally, a claim should be construed as broadly as its terminology will reasonably permit, it is also true that one copying a claim from a patent must, where the terms of the claim are ambiguous, be bound by the meaning intended by the patentee as shown by his disclosure. In re Nicolson, 49 F.2d 961, 18 C.C.P.A., Patents, 1468.

That the element of the claim here under consideration may have two meanings is clear. When considered in the light of appellant's specification it means a shutting off of one section from another section, that is, a shutting off of the room air chamber from the outside air chamber; but when the claim is read in the light of the disclosure of Steinfeld, the element means a separation of the sections constituting the passage.

The Steinfeld patent, in addition to the language hereinbefore quoted, after naming certain objects of his invention, states: "* * * Another object in this respect is to provide an improved air chamber for cooperation with the room air circulating means and a further object is to provide improved means for supplying fresh outside air to the room air circulating means while at the same time permitting this fresh air supply connection to be *normally readily breakable or separable and yet easily be made tight in its operative position.* * * *" (Italics ours.)

It seems to us that it is too clear for argument that the term of the claim—

"means forming a separable passage"—refers to the separation of the sections of the passage constituted as hereinbefore described, and has no reference to the damper at the upper end of the elbow duct, as appellant contends. It is significant that the patent refers to this damper in the following language: " * * * *If desired* a suitable adjustable pivot valve * * * may be disposed in elbow * * * thereby to variably control the supply of fresh air." (Italics ours.)

Moreover the examiner clearly intimates that it was because of the structure of the breakable joint that claim 8 of the patent, copied by appellant, was allowed. In the examiner's statement upon appeal we find the following:

"Appellant bases his right to make the claim on the assertion that the requirement 'means forming a separable passage for diverting a portion of the air' etc., is satisfied in the arrangement of passage 45, 46 in baffle 20. He argues in effect that the expression quoted is very broad and indefinite and that since valve or damper 46 can close said passage 45, the passage is separable. These arguments appear in his amendment presenting the claim (paper No. 22).

"The examiner considers that the requirement that the 'passage for diverting a portion of the air' be separable is one that is vital to the claim. It is one of the two limitations that make claim 8 of the patent differ from the claim which originally followed it and which was cancelled, by 'amendment under Rule 78', for transfer to another case. The importance of this separability was urged in their amendment C, where the patentees stated that original claim 12 distinguished over the prior art by requiring a 'removable duct', that is one having 'a breakable joint'. There is nothing like this arrangement in appellant's disclosure and there is nothing like this 'breakable joint' in the application of Galson, mentioned by the patentees as a case over which the arrangement of Steinfeld et al. merely constituted an improvement in some of the structural details."

Appellant in his brief states that: " * * The subject matter of the claim is novel and patentable whether construed narrowly or broadly. * * * "

We find nothing in the record to support this assertion. On the contrary, the clear intimation in the statement of the examiner is that the structure disclosed by appellant, and embraced in the claim as construed by appellant, was old.

Another contention of appellant is that claim 8 of the Steinfeld patent is broad enough to embrace his (Steinfeld's) damper as a means for separation of the room air and outside air passages, and that for appellant's protection the claim should be allowed to go into interference with the Steinfeld patent, so that the patentee may have the opportunity to contest priority on a broad interpretation of the claim, or disclaim a broad interpretation.

If we had any doubt respecting the breadth of the claim of the Steinfeld patent we would be inclined to agree with appellant; but we have no doubt upon this point, for we are clear that Steinfeld would be confined to his breakable or separable joint to sustain his claim 8.

Appellant further contends that, irrespective of the Steinfeld patent, appellant has properly used the expression "separable passage" to describe his construction, and therefore it cannot properly be held that his disclosure does not support the claim. Were we in accord with this view, we would be compelled to reverse the board and remand the case for a finding as to whether, in view of the prior art, the subject matter of the claim before us, considered in the light of appellant's disclosure, involves invention.

However, we are in accord with the decision of the Board of Appeals wherein it is stated that "We do not consider that any one would naturally undertake to define the Babcock passage as separable * * *." If appellant believed that the structure disclosed by him, viz., a damper by which two passages could be separated from each other, involved invention, it would have been easy for him to have framed claims clearly embodying such feature, and in view of his disclosure we have very grave doubt if he has complied with the statute requiring him to "distinctly claim" his invention.

The case of Podlesak v. McInnerney, 26 App.D.C. 399, was similar in many respects to the case at bar. One of the questions there involved was the meaning of the words "contacting blow" embraced in the claim there under consideration. In the application where the claim originated the words "contacting blow" had one meaning, while in the application in which the claim was copied it had a different meaning. The

court in its opinion stated: "* * * We do not mean to hold that the appellants' claim, which has been held patentable, is not patentable as read in the light of their specification. If, as we think, the claim, read in the light of their specification, means one thing, and the same claim, read in the light of appellee's specification, means another, the same phraseology should not be employed."

So here, appellant, knowing that Steinfeld had employed the expression "separable passage" as describing a structure not disclosed by appellant, he, appellant, if he believed that his structure of an adjustable damper separating two passages was patentable, should have used phraseology in his claim that would have clearly distinguished his invention from that claimed in the patent.

The appeal is dismissed as to claims 36 and 39, and, for the reasons hereinbefore stated, the decision of the Board of Appeals, in so far as it relates to appealed claim 32, is affirmed.

Affirmed.